IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| QTOPIA INCORPORATED d/b/a<br>CHI NETWORKS,<br>　　　　　Plaintiff,<br>v.<br>TREND MICRO INCORPORATED,<br>　　　　　Defendant. | Civil Action No.: 12-cv-2546<br><br>**Jury Trial Demanded** |

# COMPLAINT

Plaintiff Qtopia Incorporated ("Qtopia"), through undersigned counsel, brings this complaint to redress Defendant Trend Micro Incorporated's ("Trend Micro") deliberate and continued acts of trademark infringement, unfair competition, false designation of origin, and unfair and deceptive trade practices and acts under the Lanham Act, 15 U.S.C. § 1051, *et seq.* and the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.,* as set forth herein.

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over Qtopia's claims for trademark infringement and unfair competition pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a) because these claims arise under the Lanham Act, 15 U.S.C. § 1051, *et seq.* This Court has subject matter jurisdiction over Qtopia's related state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

2. This Court has personal jurisdiction over Trend Micro because upon information and belief, Trend Micro routinely conducts, solicits, advertises, and/or transacts business within this judicial district and elsewhere in Illinois, derives substantial

revenue from the sale, distribution and/or manufacture of goods or services within this judicial district and elsewhere in Illinois, and/or has otherwise made or established constitutionally sufficient contacts in this judicial district to permit this Court's exercise of personal jurisdiction.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and because a substantial part of the events giving rise to the claims in this action occurred in this judicial district.

## PARTIES

4. Qtopia is an Illinois corporation with its principle place of business at 619 South LaSalle Street, Chicago, Illinois 60605.

5. Trend Micro is a California corporation with its principal place of business at 10101 North DeAnza Boulevard, Cupertino, California 95014.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

## THE DATA ARMOR® MARK

6. Qtopia has provided information technology solutions since 1995. Qtopia works collaboratively with more than 200 customers throughout the United States to safeguard their data, digital devices, networks, and communications systems.

7. Since at least as early as 2001, Qtopia has offered its DATA ARMOR security suite of solutions and services to others. Qtopia has served diverse organizations across the United States through its DATA ARMOR brand, including government agencies, financial institutions, consumer retailers, and law firms.

8. Qtopia's DATA ARMOR suite has a wide range of capabilities that can be customized to meet a variety of business needs. The DATA ARMOR suite also

2

integrates seamlessly with the platforms, products and services furnished to customers by other information technology vendors including, on information and belief, those provided by Trend Micro.

9. Qtopia is the owner of all right, title, and interest in and to the DATA ARMOR mark, including without limitation U.S. Trademark Registration Nos. 3,025,605 and 3,025,606 for DATA ARMOR, which have each attained status as "incontestable" registrations pursuant to 15 U.S.C. § 1065. Registration No. 3,025,605 was granted for "application hosting services for others; computer infrastructure analysis, design, maintenance and support services for others, namely, monitoring of computer software, hardware, networks and systems for back-up, disaster recovery, performance and security purposes; computer diagnostic advice and technical support, namely, troubleshooting of computer software, hardware, network and system problems; computer software programming for others; consulting services in the field of analysis, design, selection, implementation and use of computer hardware, software, networks and systems" in International Class 42. Registration No. 3,025,606 was granted for "business management and consulting services in the field of providing business and business technology solutions for others" in International Class 35. True and accurate copies of the DATA ARMOR Registrations are attached hereto as Exhibit 1 and Exhibit 2.

10. At all times relevant to this action, Qtopia has had the right to use the DATA ARMOR mark and all associated goodwill.

11. Qtopia has invested substantial amounts of time and money to advertise, market, and promote its goods and/or services under the DATA ARMOR mark.

12. The DATA ARMOR mark has inherent appeal in the information technology industry, and it is a strong and distinctive mark that has been used by Qtopia in interstate commerce extensively and continuously as an indication of source for its goods and/or services. As a result of Qtopia's extensive use and promotion of the DATA ARMOR mark, Qtopia has built a valuable reputation and substantial goodwill that is symbolized by this mark. The purchasing public has come to recognize and associate the DATA ARMOR mark exclusively with Qtopia, and treats them as synonymous.

13. The U.S. Patent and Trademark Office has recognized that Qtopia's DATA ARMOR mark is entitled to a broad scope of protection in the information technology industry. The Office has cited Qtopia's U.S. Registration No. 3,025,605 as the basis for refusing to permit Infoassure.Com Inc. to register DATAARMOR with "computer software tools for controling (sic) the access to and use of digital objects and digital data" in International Class 9. The Office determined that, although Qtopia's federal registration is nominally in International Class 42, the Lanham Act prohibits registration of DATAARMOR for the applicant's wares in International Class 9 "[b]ecause the use of identical marks in connection with related goods and services creates a likelihood of confusion." A true and accurate copy of this refusal is attached hereto as Exhibit 3.

**TREND MICRO'S INFRINGING AND UNLAWFUL ACTIVITIES**

14. Upon information and belief, and according to Trend Micro's own website, Trend Micro "develops Internet content security and threat management solutions that make the world safe for businesses and consumers to exchange digital information. With more than 20 years of experience, [Trend Micro is] recognized as the

4

market leader in server security for delivering top-ranked client, server, and cloud-based security solutions that stop threats faster and protect data in physical, virtualized, and cloud environments." Trend Micro also promotes on its website that it services "48 of the top 50 global corporations, 10 of the top 10 automotive companies, 10 of the top 10 telecom companies and 8 of the top 10 banks."

15. Upon information and belief, in or around February 2011, Trend Micro began using the DATA ARMOR mark in connection with Trend Micro's proprietary suite of information technology security goods and/or services.

16. Upon information and belief, Trend Micro has sold subscriptions to DATA ARMOR security goods and/or services through its authorized channel resellers, including through CDW of Vernon Hills, Illinois, within this judicial district.

17. Upon information and belief, Qtopia and Trend Micro are direct competitors, provide goods and/or services to the same or similar customers within the same or similar channels of trade, and market, advertise and promote their respective products to the same potential customers, including each company's goods and/or services offered under DATA ARMOR.

18. Trend Micro began using the DATA ARMOR mark in connection with its products without Qtopia's permission, approval, or authorization.

19. By letter dated October 5, 2011, Trend Micro has been on notice of, among other things, Trend Micro's infringing use of the DATA ARMOR mark, and Trend Micro has refused to cease such conduct.

20. Qtopia has used the DATA ARMOR mark extensively and continuously and long before Trend Micro began selling, offering for sale, distributing, marketing, promoting, or advertising goods and/or services under the DATA ARMOR mark.

21. Qtopia is not related to, affiliated with, sponsored by, endorsed by, or otherwise connected in any way with Trend Micro. Qtopia has not authorized or approved any use by Trend Micro of the DATA ARMOR mark.

22. As detailed herein, and given the marks at issue are materially identical in sight, sound, and meaning, used in connection with similar or related goods and/or services, used in the same or similar channels of trade, Trend Micro's use of the DATA ARMOR mark is likely to cause mistake or confusion among consumers, or to deceive consumers, by causing them to believe that the source of Trend Micro's goods and/or services under the DATA ARMOR mark is Qtopia, and/or that Trend Micro is related to, associated with, sponsored by, endorsed by, or otherwise affiliated or connected with Qtopia, which is not true.

23. Upon information and belief, Trend Micro has acted with full knowledge of Qtopia's prior ownership of, rights in, and use of the DATA ARMOR mark.

24. Upon information and belief, Trend Micro has willfully used, and continues to use, the DATA ARMOR mark with the intent to confuse, mislead, and deceive relevant consumers and the public, and unfairly trade on the substantial and valuable goodwill associated with Qtopia's DATA ARMOR mark, without Qtopia's authorization or consent.

25. Trend Micro's use of the DATA ARMOR mark is causing and will continue to cause irreparable harm to Qtopia.

**FIRST CAUSE OF ACTION**
**UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN**
**(Lanham Act, 15 U.S.C. § 1125(a))**

26. Qtopia repeats and incorporates by reference the allegations contained in paragraphs 1 through 25 above as if set forth herein.

27. Trend Micro's use of the DATA ARMOR mark in connection with the sale, offering for sale, distribution, or advertising of or in connection with, its goods and services is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, association, origin, sponsorship, or approval of Trend Micro's goods, services or commercial activities by Qtopia.

28. Trend Micro has used, and continues to use, the DATA ARMOR mark in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a), and Trend Micro's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public deception in the marketplace, and serious and substantial injury to Qtopia's business, goodwill, and reputation as symbolized by the DATA ARMOR mark, for which Qtopia has no adequate remedy at law.

29. Trend Micro's actions demonstrate a deliberate and willful intent to trade on the goodwill associated with the DATA ARMOR mark, thereby causing immediate, substantial and irreparable injury to Qtopia.

30. As the direct and proximate result of Trend Micro's actions, Trend Micro has caused, and is likely to continue causing, substantial injury to the public and to Qtopia, and Qtopia is entitled to injunctive relief, and to recover Trend Micro's profits, actual damages, enhanced damages, reasonable attorneys' fees and costs, and an order for impoundment and destruction pursuant to 15 U.S.C. §§ 1116, 1117, 1118 and 1125.

## SECOND CAUSE OF ACTION
## FEDERAL TRADEMARK INFRINGEMENT
### (Lanham Act, 15 U.S.C. § 1114)

31. Qtopia repeats and incorporates by reference the allegations contained in paragraphs 1 through 30 above as if set forth herein.

32. Trend Micro's use of the DATA ARMOR mark in connection with the sale, offering for sale, distribution, or advertising of or in connection with, its goods and services is likely to cause confusion, or to cause mistake, or to deceive, by creating the false impression that Trend Micro's goods or services are affiliated, associated, or connected with Qtopia, or are sponsored, endorsed or approved by Qtopia.

33. Trend Micro has used, and continues to use, the federally registered DATA ARMOR mark in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114, and Trend Micro's activities have caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion and public deception in the marketplace, and serious and substantial injury to Qtopia's business, goodwill, and reputation as symbolized by the DATA ARMOR mark, for which Qtopia has no adequate remedy at law.

34. Trend Micro's actions demonstrate a deliberate and willful intent to trade on the goodwill associated with the DATA ARMOR mark, thereby causing immediate, substantial and irreparable injury to Qtopia.

35. Qtopia has caused, and is likely to continue causing, substantial injury to the public and to Qtopia, and Qtopia is entitled to injunctive relief, and to recover Trend Micro's profits, actual damages, enhanced damages, reasonable attorneys' fees and costs, pursuant to 15 U.S.C. §§ 1114, 1116, and 1117.

## THIRD CAUSE OF ACTION
## UNFAIR AND DECEPTIVE TRADE PRACTICES
### (Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*)

36. Qtopia repeats and incorporates by reference the allegations contained in paragraphs 1 through 35 above as if set forth herein.

37. Trend Micro's use of the DATA ARMOR mark in connection with the sale, offering for sale, distribution, or advertising of or in connection with, its goods and services has caused, and continues to cause, a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of its goods and services.

38. Trend Micro's use of the DATA ARMOR mark in connection with the sale, offering for sale, distribution, or advertising of or in connection with, its goods and services has caused, and continues to cause, a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by Qtopia.

39. Upon information and belief, Trend Micro's conduct complained of herein has been, and continues to be, willful.

40. Trend Micro's conduct complained of herein constitutes unfair and deceptive trade practices in violation of 815 ILCS 510/1 *et seq.*, and Trend Micro's conduct has caused and, unless enjoined by this Court, will continue to cause a likelihood of confusion or of misunderstanding, and serious and substantial injury to Qtopia's business, goodwill, and reputation as symbolized by the DATA ARMOR mark, for which Qtopia has no adequate remedy at law.

41. As a direct and proximate result of Trend Micro's conduct complained of herein, Trend Micro has caused, and is likely to continue causing, serious and substantial injury to Qtopia, and Qtopia is entitled to injunctive relief and all other available remedies, including without limitation attorneys' fees and costs, pursuant to 815 ILCS 510/1 *et seq.*

## DEMAND FOR RELIEF

**WHEREFORE,** Qtopia respectfully requests that the Court:

(1) Enter judgment that Trend Micro has engaged in unfair competition and false designation of origin pursuant to the Lanham Act, 15 U.S.C. § 1125(a);

(2) Enter judgment that Trend Micro has engaged in federal trademark infringement pursuant to the Lanham Act, 15 U.S.C. § 1114;

(3) Enter judgment that Trend Micro has engaged in unfair and deceptive acts or practices pursuant to the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.*;

(4) Order that Trend Micro and each of its agents, officers, employees, representatives, retail channel partners, successors, assigns, attorneys and all other persons acting for, Trend Micro, or in concert or participation with Trend Micro, be preliminarily and permanently enjoined from:

   (a) Using the DATA ARMOR mark or any other confusingly similar copy, reproduction or colorable imitation on or in connection with its business or any of its goods or services, including without limitation on or in connection with its software and services;

   (b) Using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with its business or any good or service that is a confusingly similar copy, reproduction or colorable imitation of the DATA ARMOR mark, including without limitation on or in connection with software and services;

   (c) Using any trademark, service mark, name, logo, design or source designation of any kind or in connection with its business or any goods or services that is likely to cause confusion, or to cause mistake, or to deceive or public misunderstanding that such goods

           or services are produced or provided by Qtopia, or are sponsored, endorsed, or authorized by Qtopia, or are in any way connected or related to Qtopia; or

    (d)    Engaging in any acts of deceptive trade practices, as alleged herein;

(5) Order that Trend Micro file with the Court and serve on Qtopia's counsel within thirty (30) days after issuance of any injunction, or within such reasonable time as the Court may direct, a report in writing and under oath, setting forth in detail the manner and form in which Trend Micro has complied with any injunctions;

(6) Order that Trend Micro recall and destroy all goods and services, and other documents or materials prepared in connection therewith, bearing the DATA ARMOR mark or any confusingly similar marks, which may have been used by Trend Micro or under Trend Micro's authority;

(7) Order that Trend Micro deliver up for impoundment and for destruction all signs, packages, receptacles, advertising, promotional or marketing material, product packaging, catalogs, Internet websites or other material in the possession, custody or control of Trend Micro that are found to adopt or infringe the DATA ARMOR mark or that otherwise constitute false designation of origin or unfair competition with Qtopia and its products and services;

(8) Compel Trend Micro to account to Qtopia for any and all profits derived by Trend Micro's infringing activities as described herein;

(9) Award Qtopia all damages caused by the acts forming the basis of this Complaint, including without limitation Trend Micro's profits and Qtopia's actual damages and/or a license fee or reasonable royalty;

(10) Based on Trend Micro's knowing, intentional, and willful use of the DATA ARMOR mark and other conduct complained of herein, award treble and/or enhanced damages and/or profits, and punitive damages to the fullest extent permitted by law and equity, as provided for by 15 U.S.C. § 1117(a), 815 ILCS 510/3, and/or other applicable law;

(11) Award Qtopia prejudgment and post-judgment interest, as provided for by 15 U.S.C. § 1117(b) and other applicable law;

(12) Award Qtopia the costs of this action and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), 815 ILCS 510/3, and/or other applicable law; and

(13) Order all such other and further relief to Qtopia as the Court may deem just and equitable.

## JURY TRIAL DEMANDED

Qtopia respectfully demands a trial by jury on all claims and issues so triable.

Dated: April 6, 2012

Respectfully submitted,

By: /s/D. James Nahikian
D. James Nahikian (IL 6237746)
jnahikian@nahikianglobal.com

NAHIKIAN GLOBAL
Intellectual Property & Technology
 Law Group
1636 North Wells Street, Suite 415
Chicago, Illinois 60614-6009
(312) 399-3099

Attorney for Qtopia Incorporated